## Allen et al. v. Commonwealth.

(Decided November 4, 1932.)

LEEBERN ALLEN and ERVINE TURNER for appellants.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

The appellants were indicted for the offense of robbery and sentenced to serve two years in the penitentiary. To reverse the judgment against them, they first insist that the verdict is flagrantly against the evidence. To dispose of this contention requires a resume of the evidence.

For the commonwealth, Coet Conley testified that one Friday morning (the date not being given in the narrative bill of exceptions, although it is clear that it was before the finding of the indictment) about 10 o'clock he and Callie Napier, Frankie Napier, and Pearl Napier were riding down a road in Breathitt county;

that, as they turned a point, they saw the appellants, Thurman Allen and W. H. Hudson, approaching them; that, as the two parties approached each other, Allen drew a pistol on Conley, and demanded that Conley surrender a pistol he had; that Allen and Hudson dismounted from their horses as did Conley; that Hudson poked Allen in the side with a pistol which Hudson had and told Conley to give up his pistol, whereupon Frankie Napier, assisting Conley, took Conley's pistol out from under Conley's arm and passed it to Callie Napier, who passed it to Hudson, who gave it to Allen; that thereupon all parties remounted, and rode down the road; that, while they were doing so, Allen told Conley that, if he would make no claim to the pistol and make his "get away," it would be all right; that thereupon Conley and his crowd rode on off down the road, leaving Allen and Hudson; that the next day Conley came to Jackson, the county seat of Breathitt, to get his pistol; that he did get a pistol from the sheriff, but found that it was not his; that later, however, the sheriff gave to Conley the latter's pistol in exchange for the one given him earlier. Conley further testified that none of his party was drunk on the road at the time of the encounter between him and Allen. The testimony of Frankie Napier was about the same as that of Conley. Callie Napier testified very much as did Conley and Frankie Napier, with the exception that she did not connect Hudson up very well with the taking of the pistol, she testifying that Hudson stood over on the side of the road talking to her while Allen was having his transactions with Conley.

For the defendants, Allen testified that he was a deputy sheriff of Breathitt county; that on the occasion in question he had some papers to serve, and had requested Hudson, a private citizen, to go along with him to assist in the service of these papers; that, as he and Hudson were riding along the road, they came upon the Conley party; that, as he and Hudson approached the Conley party, Conley pulled his coat back, and thereupon he observed that Conley had a pistol; that Conley and his crowd were drunk and disorderly; that he then told Conley that he was under arrest for carrying a concealed and deadly weapon and for being drunk; that he took the pistol from Conley after having arrested him; and that neither Hudson nor any of the others of Conley's party had anything to do with Con-

ley's arrest or the taking from Conley of his pistol. Allen denied telling Conley that, if he would let him keep the pistol, Conley could make his "get away," but testified that, as he, Hudson, and Conley were riding along the road towards Jackson, the parties for whom he had been hunting to serve his papers upon came up; that he stopped to serve his papers, and that, while he was doing so, Conley and his party made their escape; that he came in to Jackson that night and turned over to his superior, the sheriff, what he thought was Conley's pistol, but, as it turned out, his own pistol, which resembled Conley's pistol very much; that later, when he discovered the mistake, he went at once to the sheriff and turned over to him Conley's pistol; that he had no purpose in taking Conley's pistol of converting it to his own use, but had merely disarmed Conley in the making of the arrest and intended to and did turn Conley's pistol over to the sheriff.

Hudson testified as had Allen. The defendants by other witnesses attacked the general moral reputation of the commonwealth's witnesses. The sheriff corroborated Allen about the turning over of the pistols to him. From this resume, it is obvious that this was a case for the jury and that there was sufficient evidence to support a finding of robbery. As said by us in Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629, 630:

> "The verdict at last depends on the credibility of the witnesses, which is peculiarly and exclusively a question for the jury. Haynes v. Commonwealth, 194 Ky. 469, 239 S. W. 780. This court will not disturb the verdict of a properly instructed jury unless it is flagrantly and palpably against the evidence. The jury are the judges of the credibility of witnesses, and unless a verdict is so flagrantly against the evidence as to shock the conscience and lead unerringly to the conclusion that it was the result, not of deliberation, but of passion and prejudice, it must stand. Kirk v. Commonwealth, 192 Ky. 460, 233 S. W. 1060; Wells & Isaacs v. Commonwealth, 195 Ky. 740, 243 S. W. 1015."

There is no merit in the first contention of counsel.

Appellants next urge that the court failed to properly instruct the jury. In this we think they are correct. Under the evidence, the jury could have come to

one of several conclusions, which, being true, the court should have submitted the law as to such conclusions, it being the court's duty to instruct on the whole law of the case. First, there was evidence to support the theory that Allen and Hudson did by violence, force, and arms and without right take from Conley his pistol with the intention to permanently deprive him of it and to convert it to their own use. On this theory, it was proper for the court to instruct as he did in instruction No. 1 on the offense of robbery. We approve this instruction. Secondly, there was evidence to support the theory that, although Allen arrested Conley, he had no right to do so, but, despite this lack of right in the arresting, the taking of the pistol by Allen from Conley was not done with any intent to convert it or to permanently deprive Conley of it, but only for the purpose of turning it over to the Sheriff to be kept until Conley's trial and then surrendered to him. On this theory we would have a case of assault and battery, and the court should have instructed on that. Lunce v. Commonwealth, 232 Ky. 214, 22 S. W. (2d) 629; Southerland v. Commonwealth, 217 Ky. 94, 288 S. W. 1051. Thirdly, there was evidence to support the theory that Hudson and Allen lawfully arrested Conley and relieved him of his pistol only for the purpose of turning it over to the sheriff to be kept until Conley's trial and of then surrendering it to him. The jury should have instructed on this aspect of the case, and this the court did endeavor to do by instruction No. 2. As given, however, the court confined the right of Allen to arrest Conley to an arrest for the offense of carrying a concealed and deadly weapon when Allen distinctly testified that he arrested Conley, not only for that offense, but also for being drunk out there on a public road. The right of Allen to arrest Conley for being so drunk should have been submitted to the jury. In one aspect, this instruction was too favorable to the appellants, for it told the jury in substance to acquit the appellants if they lawfully arrested Conley. They might have lawfully arrested him and yet have taken his pistol from him, not as part of the arrest nor with an intent of later giving it back to him, but with an intent to convert it to their own use and to permanently deprive Conley of it. In such state of case, the arrest alone, though lawful, would not be a defense. The appellants under such theory would be guilty of larceny, and the jury should have been instructed on that theory of the case. See

Richards v. Commonwealth, 67 S. W. 818, 24 Ky. Law Rep. 14.

Judgment reversed for a new trial consistent with this opinion.