## Grant v. Commonwealth.

September 27, 1946.

George W. Boner for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

George Grant has been convicted of the crime of manslaughter, and sentenced to imprisonment for a term of fourteen years. He seeks a reversal of the judgment, and asserts that the trial court erred in three respects: (1) In rejecting evidence offered by him; (2) in admitting incompetent evidence over his objections; and (3) in overruling his motion for a directed verdict of acquittal.

The uncontradicted evidence shows that about 9 p. m. on November 2, 1945, appellant entered a drugstore in

Nicholasville, Kentucky, owned and operated by Peter Weber, and ordered a Coca-Cola. Apparently angered by what he considered unnecessary delay, he cursed and asked why he couldn't have a Coca-Cola. Mr. Weber, who was standing nearby counting money, said: "The girl is waiting on you now." Thereupon appellant attacked Weber, and they engaged in a scuffle. Weber obtained a pistol behind the counter and ordered appellant out of the store. Appellant left the store and returned in ten or fifteen minutes with a 22-caliber rifle. He located Weber, followed him behind the counter, and, as Weber ran toward the front door, shot him in the back. Weber died in a hospital in Lexington on November 11, 1945. After the shooting appellant ran down the street and went to the city jail and surrendered. His sole defense was insanity. He testified that he remembered nothing of the transaction, and that his memory was blank for a period of two weeks preceding the killing and until Monday of the following week. He stated that he joined the United States Navy on December 11, 1941, and was on the U. S. Destroyer Duncan when it was sunk in the South Pacific in October, 1942. He was in the water several hours before he was rescued and was returned to the United States about a month thereafter. He was arrested on several occasions as a deserter, both before and after the sinking of the Duncan, and was given a bad conduct discharge on February 27, 1943. He claimed that he suffered a severe shock to his nervous system by reason of his experience on the Duncan, and upon his return to the United States began drinking intoxicants and taking large quantities of phenobarbital, a habit forming drug. He introduced several witnesses who saw him during the two weeks' period before November 2, 1945, and a few who saw him just before or after the shooting. They testified, in substance, that he appeared to be drunk, and one or two stated that he "acted like a crazy man." A long hypothetical question was propounded to Dr. L. V. Williams, a local physician, and he was asked if he believed that at the time of the alleged shooting the defendant, George Grant, "was of sufficient mind and reason to know right from wrong or had sufficient will power to govern his actions or knew or realized what the consequences of his acts would be." An objection to the question was sustained, and this is the testimony which appellant con-

tends was erroneously excluded. Dr. Williams had no personal knowledge of appellant's condition and was introduced solely as an expert witness. There was no proof as to the practical experience possessed by the witness, nor was any effort made to qualify him as an expert on matters of insanity. The record does not reveal the ground upon which the objection was sustained, whether failure of the appellant to qualify the witness as an expert or inclusion in the hypothetical question of facts not proven. There is conflict in the authorities as to the competency of a physician who is not a specialist in diseases of the mind to testify as an expert on matters of insanity based upon the hypothetical state of facts. Annotation in 54 A. L. R. 860. The rule in this state is that a physician need not be a specialist on insanity in order to render competent his testimony on a hypothetical case, but there must be some proof that he has studied the subject of diseases of the mind or has had some experience with mental cases. Voice v. Commonwealth, 284 Ky. 416, 145 S. W. 2d 45; Robertson v. Commonwealth, 275 Ky. 8, 120 S. W. 2d 680; Bishop v. Commonwealth, 109 Ky. 558, 60 S. W. 190; Abbott v. Commonwealth, 107 Ky. 624, 55 S. W. 196; Montgomery v. Commonwealth, 88 Ky. 509, 11 S. W. 475. Under our rule, the court properly sustained the objection to the hypothetical question propounded to Dr. Williams, but in no event can appellant complain, since he failed to make an avowal as to what the answer of the witness would be. Frazier v. Commonwealth, 299 Ky. 492, 185 S. W. 2d 688; Elliott v. Commonwealth, 290 Ky. 502, 161 S. W. 2d 633; Burton v. Commonwealth, 254 Ky. 66, 70 S. W. 2d 981.

The evidence which appellant claims was incompetent and admitted over his objections is the evidence introduced in rebuttal by the Commonwealth. It is argued that this evidence was admissible only in chief. Appellant introduced several witnesses who testified to facts tending to show that he was insane at the time the homicide was committed, and he also attacked the reputation of the deceased for peace and quiet. All of the witnesses introduced by the Commonwealth in rebuttal testified on these two points, and, consequently, their testimony was not in chief.

The contention that the evidence was insufficient to

take the case to the jury and that the court erred in overruling his motion for a directed verdict of acquittal is wholly without merit. It was appellant's claim that he was suffering from temporary insanity caused by the excessive use of intoxicating liquor and opiates. He introduced a number of witnesses who testified that he appeared to be drunk, and one or more stated that he "acted like a crazy man." On the other hand, a number of eyewitnesses of the shooting testified that he acted in a calm and deliberate manner and apparently knew what he was doing. Dr. C. A. Neal was introduced in rebuttal by the Commonwealth, and questioned concerning the effects of whisky and phenobarbital when consumed in the amounts claimed by appellant. On cross-examination, in answer to a hypothetical question, he stated that in his opinion the appellant, at the time of the shooting, had sufficient mind to know right from wrong. The evidence on the question of insanity was conflicting, and the court properly submitted that issue to the jury.

The judgment is affirmed.